Counsel for Appellant, if you would make your appearance and proceed, please. Good morning. If it may please the Court, my name is Matthew Brissenden for the Appellant, Mr. Lin. I'd like to start, if I could, by focusing on the Court's pre-trial ruling because I think it's hard that this ruling raises an important question of law, and that is whether a person can knowingly conspire to distribute a controlled substance if they don't know the substance they are dealing with is, in fact, controlled under federal law. And we respectfully submit that the answer to that question is no, there are two views. The first being the elements of the underlying substantive offense, 21 U.S.C. 841. As the Supreme Court emphasized recently in Rwanda, that statute employs a knowing mens rea that applies to each and every element of the offense. And most importantly, as the Court emphasized in Rwanda, the purpose of that mens rea standard is to separate innocent from morally blameworthy conduct. The second reason and the second argument that we've made is, notwithstanding the elements of the underlying substantive offense, the government here, as they must, concedes that the defendant was convicted of a conspiracy. They concede that the conspiracy is a specific intent crime, and that under this Court's holding and the standard of the United States v. Blair, it requires a, quote, conscious purpose to do wrong, not only with knowledge of the thing done, but a determination to do it with bad intent or with an evil purpose or motive. And so, in my mind, it raises the question, how could it be said that a person who is dealing with a substance or a chemical can be said to be acting with a bad intent or an evil motive or a purpose if they don't understand that substance is controlled under federal law? Okay, well, what if they know that it's illegal, they just don't know, they haven't read it section 846? I would entirely concede, Your Honor, I'm not suggesting that there's an element of willfulness equivalent to, say, in a tax case, right? Willfulness is sort of a tricky word, right? It can mean sort of different things in different contexts. At its highest, it means you have to have a laser lawyer-like understanding of the statute involved, and I'm not suggesting that at all. I'm suggesting that it does require a mens rea of at least knowing that you're engaged in bad actions. What if I pick up an illegal substance, and I say, well, I think it's legal, but I don't put it in my car. What I do is I go get a truck, and I make it look like an Amazon truck, and I ship it in an Amazon truck, viewing the evidence favorably to the government. Why isn't that at least a reasonable inference that I knew that there was something shady about it? Otherwise, I'd have just put it in my car. So, I mean, and I don't mean to split hairs, but obviously, my client is not the individual transporting the drugs within the Amazon van. Nobody's put it in Mr. Yu's truck. Yes, it's alleged that on a number of occasions, he helped to load the Amazon van, so you're absolutely correct about that. What I would acknowledge, Your Honor, I'm not suggesting the government had no facts from which it could argue an inference of the intent, but the problem is it was for the jury to determine whether or not that intent existed. And the court's pretrial ruling essentially taking this defense off the map, it prevented the attorneys from advancing the argument, advancing the evidence that might support that argument, that Mr. Lin did not, in fact, know. So my point is, not that the government could not introduce any evidence at all from which one might argue or infer he had that intent. I would submit there's very little of it. Really, it comes down to the Amazon van. I don't understand what you do with McFadden. I mean, McFadden seemed to be fairly clear in saying that it offered two ways as it relates to the underlying offense of 841, that you could know that it could be illegal. One, you know, that you knew it was on the registry, the CSA. The two, that you knew the substance. He knew it was marijuana. I mean, there's no dispute about that. And so if you combine that, that he knew it was marijuana, with the fact that he's loading it onto an Amazon truck, I mean, in terms of unlawfulness, tell me what I'm missing. I mean, number one, focus on McFadden and tell me why the fact that he knows it is marijuana is not enough in this case. So, and I recognize that this court has a history of following dicta Supreme Court cases. You better believe it. I understand that. But what I will say is, this is a case where I think that dicta has been substantially enfeebled and eroded by the subsequent decisions of the Supreme Court. Number one, starting with Justice Roberts' concurrence in that decision, specifically pointing to this exact sentence and saying, this should not be treated as controlling law. This is incorrect. And the reason that he articulates is that, in essence, we're not dealing with what is a mistake of law. This isn't really a mistake of law defense. It would be, if Mr. Lin were to say, I had no idea that it's illegal to distribute controlled substance, that's a mistake of law defense. It's not a valid defense. But the defense here was, I didn't know this particular substance was scheduled. And that is a mistake of fact. Under the court's analysis, yes, Your Honor. Isn't it scheduled under state law? I mean, it's only legal in Oklahoma for medical marijuana. So, it is a controlled substance under state law as well as federal law. I'm not disputing the fact that it is, there's obviously regulations in place within the state of Oklahoma as to how it may be limited, the manner in which it may be distributed, as well as, obviously, to schedule substance. So, isn't there plenty of evidence that it was being distributed illegally when you've got a fake Amazon truck and marijuana is in trash bags or boxes from some large store? So, I mean, the question and the focus of our defense has always been, what did Mr. Lin understand, right? Okay, but the facts are. The question is, what did he know factually? Going into a fake truck, putting in trash bags, putting in boxes from stores. It's not anything that looks like a medical marijuana distribution. What I would say is this is an unusual case in the sense that we're dealing with a defendant here who, by all indications, didn't have any exposure or sophistication or understanding of the regulatory scheme here, who didn't speak English, who worked as an intern on this farm for five months, surrounded by other farms in Oklahoma doing exactly the same thing, was filling out regulatory paperwork, apparently, to comply with state law. So, Your Honor, I understand. There's an argument that the government can make that a jury should have found under these facts there was enough here to infer that Mr. Lin knew, right? But a jury might not have accepted that inference, and that's my point. It's that we were constrained from advancing a legal argument and a legal defense that should have been a valid defense and that the jury was never permitted to consider. Assuming, I want to follow up on the Chief's question about McFadden. Assuming that Ruan, Rahafe, Chief Justice Roberts' concurrence in McFadden, all of those called into question the second rationale in McFadden, how do you distinguish Judge Hartz's published opinion in U.S. v. Chamo with regard to the knowledge, you may not know that fentanyl is a controlled substance, the panel said, but that if you know it is fentanyl, that is enough, and he applied, of course, the second rationale in McFadden. Yes, Your Honor. Absolutely. So, one thing I do want to make sure is there's two levels that I'm making very clear is that we sort of have two levels of argument here, one relating to 841 and one relating to 845. I'm only asking about the 841 argument. So, I would acknowledge, Your Honor, that the prior panel rule presents an obstacle. I'm confident in our legal reasoning, and I firmly believe that under Rahafe, this was not actually a mistake of law enforcement. But Rahafe preceded Chamo. Yes, but I acknowledge that under the prior panel rule, that is a problem for sort of our first tier of argument. Okay. It presents an obstacle. Do you have a counterargument? Well, what I would say is this, is that if the prior panel rule works against us with respect to that first level of argument, I think it works in our favor with respect to the specific argument relating to the mens rea of 846, right, the conspiracy statute. Because I think this court's decisions in Weeks and in Blair, I think they support that argument in particular, that there's a mens rea standard that requires a bad purpose. And the argument that I'd like to suggest to the court is that it's impossible to act with that bad purpose if you legitimately don't know. And I understand the court would say, well, did he really not know? If you legitimately do not know it's a controlled substance, that should be . . . What if you know it's marijuana? I would submit that you know it's marijuana, but don't understand that marijuana is a controlled substance. That, as well, should have been a defense. Just as an example, I'm an attorney. I think I'm relatively well educated. But when I sit down with the DA's schedules of controlled substances, we're talking about hundreds upon hundreds of chemicals and drugs and compounds, many of which I've never heard of, and I can't imagine that the average layperson has heard of. That's not this case. It is not this case. And you're right, this case deals with marijuana. But the legal principle underlying it has broader implications. If you were to hand me a bottle of Minarex and ask me to deliver it to my neighbor, I would have no idea that I'm handling a Schedule I controlled substance, let alone that I'm committing a federal felony that could subject me to 20 years in prison. In Wuhan, the Supreme Court said, wrongdoing must be conscious to be criminal. And the government's construction of 846 makes a mockery out of that legal principle. Did the court exclude the defendant from arguing that he did not know this was a controlled substance, which I think you're implying? Because I thought the argument was that he was precluded from arguing that it is in compliant with Oklahoma law. There were both. The judge's pretrial ruling both precluded references to state laws, potentially confusing, as well as what the court was framing as a mistake of law defense. For the reasons I'm articulating, I don't believe it actually was a mistake of law defense. But both of those were taken off the table at the outset by the court's pretrial ruling. Well, just to play devil's advocate, if the defendant is precluded from arguing that what he was doing, he thought, was in compliant with Oklahoma law, to follow up on Judge Seymour's question, what does that have to do with whether or not he was in violation of 846? Compliance with Oklahoma, first of all, shipping marijuana out of state, even if it's not medical marijuana, is obviously a blatant violation of Oklahoma law. But putting that aside, why does compliance with Oklahoma law have anything to do with whether or not he was in violation of 846? And why wasn't that, particularly under U.S. v. T. and the like, minimizing the probative value and maximizing the danger of unfair prejudice, why wasn't that at least within the judge's discretion to exclude that? So, I mean, listen, I obviously see it as a must that it wasn't a legal defense to say I was in compliance with Oklahoma state law, and I understand that. But marijuana, it's in a strange position right now in our culture, in our country, and the way that it's been positioned lends itself to confusion, especially for people who are not sophisticated. It's easy in many states to go down the street, and there's marijuana dispensaries everywhere, and the average person might not well understand that that's still a federal crime going on within, but for the grace of federal prosecutors, everybody operating those businesses and paying taxes on those businesses could be prosecuted. So, it's relevant factually, not legally, Your Honor, it's not relevant to create a defense, but I feel that the defense counsel should have been able to explore it because it supported the inference that the defendant really didn't understand that he was doing something prohibited by federal law. I see I have a little bit of time remaining, and I'm happy to answer any further questions by the court, otherwise I would respect the result. Of course. Thank you. May it please the court, Stephen Craig on behalf of the United States. One thing I will read with Mr. Grissom and then on is, I think the key question here is, what is the mens rea required for a drug conspiracy, for a violation of Title 21, Section 846? Starting probably with, I think probably the hardest argument for me, talking about 846 and specifically talking about this court's decision in weeks. Where in weeks this court said, an agreement with others that certain activities be done without knowledge, at the time of the agreement, the activities violate the law. It's insufficient to establish conspiracy. Devoid of any context, that is a very difficult hurdle for the government to overcome. But when viewed in context, both in the context of what the facts and the underlying object of the conspiracy in weeks was, as well as cases like this court's decision in Blair, and the Supreme Court's decision in Peola, it shows why weeks is not the insurmountable hurdle for us. And that's because where Mr. Lynn's counsel leaves off with Blair is what the court said right after that. It quotes Peola to say that the general conspiracy statute, which is what all of these have been dealing with, 18 U.S.C. 371, offers no textual support for the proposition that to be guilty of conspiracy, a defendant must in effect have known that his conduct violates federal law. Instead, a natural reading of these words would be that since one can violate a criminal statute by engaging in the forbidden conduct, a conspiracy to commit the offense is nothing more than an agreement to engage in the prohibited conduct. You can juxtapose Blair and the ultimate holding in Blair with weeks and the ultimate holding in weeks. In both instances, the defendants said that their pleas of guilty were not knowing involuntary because they did not know that it would be illegal under federal law. In weeks, this court said that would have provided a defense. But in Blair, this court said that did not do anything to undermine the factual basis. The difference between the two is that weeks involves securities fraud, a conspiracy to commit securities fraud, which this court explained in Wegner requires a willful mithread. In Blair, the conspiracy was a conspiracy to commit sports betting, which Blair itself explained required a knowing mithread. This all goes back to the ultimate underlying principle that the Supreme Court recognized in Viola, that even weeks recognized, that the criminal intent necessary for conspiracy is at least the criminal intent necessary for the substantive offense itself. Ultimately, for a conspiracy under 846, which is governed by general conspiracy law, we look to what the criminal intent is for the underlying offense here in Attalation 841. This gets us into, as Chief Judge Holmes mentioned, McFadden, and as Judge MacRack mentioned,  McFadden, adopted by Shamo, provides two avenues which the government can take to demonstrate an 841 violation. The first avenue is proving that whatever substance, whatever unknown substance there is, it's a federally controlled substance. The defendant knew that it was a federally controlled substance. The other option is to show that the defendant knew what the substance was, even if the defendant did not know it's federally controlled. This makes sense because controlled substance, and I think this is where, one way that Mr. McFadden's point is, controlled substance isn't understood in its common and ordinary sense. The term controlled substance for the Controlled Substances Act is defined by Congress in Title 21, Section 802, Label 6, as anything that is a Schedule 1, 2, 3, 4, or 5 controlled substance. Further, Schedule 1 controlled substance, at least to the extent we're talking about was also defined specifically by Congress as being a Schedule 1 controlled substance, and that's Title 21, Section 812, Schedule 1, Subsection C, Subsection 10. This isn't, unlike Ruan, where we're talking about a defendant applying their conduct to a legal standard and then having to determine whether this is a violation of law or not. Same thing with Section 922, G5, that was discussed in Rehabe, where the defendant has to figure out whether their conduct makes them an illegal or unlawful citizen, right? Illegally or unlawfully present in the United States. Or even Liberota, which dealt with, does my possession or does my use of a benefit of a food stamp done in a way that's not authorized? This is simply a subset of a defined term. This is purely a question of law. Did the court exclude the defendant from presenting evidence that he did not know that it was a controlled substance? No, no. The things that the motion in limine addressed primarily was whether or not the defendant or anyone could address what state law is. There was a discussion about mistake of defense. My understanding is that Mr. Lynn, to the extent that has been raised, is abandoning that he was trying to raise the mistake of law defense. As to the things that he has said that he's raising, which I don't think were addressed in the motion in limine, at least explicitly, and to the extent they were, weren't ruled upon by the district court. He actually had the ability to raise the, this is not criminal. He didn't know it was criminal. If this court looks at pages 118, essentially through 124 of the record on appeal, these are the jury instructions. They say things like, the jury was instructed, the crime charge was, quote, to conspire with someone to violate federal laws pertaining to controlled substances. And to convict, they had to find, quote, four more persons agreed to violate the federal drug laws. The defendant had to know the essential objective of the conspiracy, and the defendant knowingly and voluntarily involved himself in the conspiracy. Page 120, the jury was instructed that the conspiracy, quote, was an agreement between two or more persons to accomplish an unlawful purpose, a kind of partnership in criminal purpose. Page 121, the evidence showed that members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan. Ultimately, the jury was instructed that he had, essentially that there is an unlawfulness discussion. And so, to say that based on the jury instructions, he was foreclosed from arguing that, I think would be a misreading of the Illuminate Order, which, coincidentally, was a preliminary order. If there was a question, could I raise this, that's something that the judge encouraged him to bring up prior to making the argument, which was never done. To get to the thrust of the motion in Illuminate with regard to state law, I think probably one of our best cases is Cox. Cox, the Kansas legislature, I think, I would submit, did something that would be an even more affirmative attempt to give a defense to federal law than what the Oklahoma legislature did here. As I think Judge Seymour mentioned, Oklahoma still makes marijuana a controlled substance. It has allowed for certain authorization processes, but those only provide a defense under state law. Here, as opposed to Cox, where it said, even if federal law prohibits this, as long as the firearm or the firearm accessory was manufactured in the state of Kansas, federal law essentially doesn't apply. Here, this court said there was no due process defense that the Kansas state statute would authorize. The Supremacy Clause of the Constitution essentially forecloses that. The same is true here. The Supremacy Clause forecloses any argument that state law would allow Mr. Blinn to possess a controlled substance. Even when we're talking about Ruan, and the exception that is authorized by this subchapter, which Ruan says the defendant bears the burden of production on, it's as authorized by this subchapter, not as authorized by any law. I know there are several other issues that Mr. Blinn's counsel didn't talk about. I'm happy to address any of those that are in the brief. Let's focus for a second on the deliberate ignorance instruction. What is, to use the term that is in the case law, the operant fact that Mr. Blinn engaged in deliberate acts to avoid? What is that fact, and what are the deliberate acts? Your Honor, I would submit that because the government under McFadden could have proceeded under two theories, the government also could have proceeded under an option that was available to the government, was that the substance was controlled. In fact, in the government's proposed jury instructions, where it included this, knowledge and illegality was the operant fact that was included. As for what facts support that, keeping in mind that this court explained in, among other cases, Del Rio or Doones, that that determination is made in a light that's favorable to the government and includes both direct and circumstantial evidence. Things like the marijuana was placed in the trash bags and boxes, the fact that the marijuana was placed not only in a fake Amazon van, but also in a Granite Company van. In a what? A Granite Company. I believe the company was Arch Granite and Cabinetry or something along those lines. And then ultimately, the fact that Mr. Blinn purported a claim to be a management intern, whose entire purpose, one of his major purposes, was to understand what the law is. So, to say my purpose is to make sure, to learn the licensing scheme, but I'm going to not figure out something that I think is probably fairly common knowledge, that marijuana is still a federally controlled substance. That would be the deliberate ignorance that the instruction would be designed to attack. Essentially, the defense that he's trying to raise now on appeal. I take it that the presence of a lot of cash at the scene and the presence of firearms were not necessarily indicative of unlawfulness in this context. I mean, because given the nature of marijuana, the marijuana business, which is essentially a cash business now because of federal restrictions on banking, they have a lot of cash and they need, well, in their view, would need guns to protect that cash. So, those things, it strikes me, to the extent that Mr. Blinn looks around, would not be indicative of the unlawfulness of the enterprise that they're involved in. Do you agree with that? Your Honor, I respectfully disagree. The reason why I would disagree is that, for the very purpose that you said, it's a cash business because it's unlawful under federal law. Normally, a business would not be operating, holding, I believe it was $100,000 in cash in a vacuum-sealed container. The only reason why that's the case, we can say, essentially based on our collective knowledge, is because it's unlawful under federal law. You cannot use the banking system. So, I would submit that you cannot use the banking system for marijuana transactions because it's unlawful under federal law. So, whether or not it's unlawful under state law, maybe that would be a more questionable presumption, or more questionable, it would be harder to say that, but the fact that you're keeping a large quantity of cash because you cannot use the banking system, the reason you cannot use the banking system is because it's unlawful under federal law. So, does this court need to say, rely on the cash or rely on the gun? Not necessarily. I think the trash bags and the fake Amazon van and the Granite Company van get us there. But, since you asked, regarding the cash, I think the cash probably does go in our favor as well. Are there any further questions? I'd ask that you approve the judgment sentence bill. Thank you. Just briefly, I would respectfully disagree with my colleague's characterization of our position. With both the court's pretrial ruling and whether or not we have abandoned somehow a mistake of law and defense, my reading of that pretrial decision is that defense counsel was instructed not to go anywhere near the issue of whether or not the defendant understood whether or not what he was doing was lawful under federal law, including whether or not he understood that marijuana was a controlled substance. I think the court was mischaracterizing what should not have been a mistake of law as a mistake of law defense. So, that's my sort of read on that pretrial ruling. I have to say that I was a little perplexed by the government's position with respect to the jury instructions. If I understand the government's argument correct, it's that it is not a defense to suggest that you do not understand a substance is controlled under federal law. And yet, if I heard them correctly, I think they were arguing that under the standard Tenth Circuit jury charge, defense counsel could have made that argument. So, I'm not sure how you reconcile those two decisions. Obviously, this jury instruction is based on this Tenth Circuit precedent. It's a long-standing precedent. So, to suggest that this would have permitted you to make that argument, I think really undercuts the government's position here. To be clear, what precluded the defense counsel from making that argument was the court's pretrial ruling. What do you say to the fact that it wasn't exactly that, a pretrial ruling? And as is often the case in motion and limine situations, you can try to raise the issue in the course of the trial. What made this a final pretrial ruling? What I'd say, number one, is it certainly was enough to preserve the issue. But number two, throughout the trial, defense counsel repeatedly bumped up against this ruling. There are multiple points in the trial where defense counsel sort of put his toe into this water and the judge pretty firmly said, no, I've ruled on this. I'm not letting you explore those areas. So, it's not as if defense counsel entirely gave up the fight. The last thing I wanted to say is that there's been some discussion about evidence that might have supported an inference. In my view, this question is fundamentally a question, if I'm correct, it's a constitutional error. The defendant was deprived of its Sixth Amendment right to present a defense. And fundamentally, that's a Chapman harmless error standard. Under that harmless error standard, it's the government's burden to prove beyond a reasonable doubt that the jury would have reached the same verdict. It's not enough to say, well, there's this little bit of evidence, there's this little bit of evidence. The court needs to be convinced that it didn't contribute to the verdict. And I would respectfully submit that the government cannot meet that burden. Are you, just to be clear, are you making that argument in connection with your exclusion of the pretrial ruling? Yes.  Thank you. Unless there's any further questions. Thank you. Thank you, counsel, for your arguments, cases submitted.